UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

GERMAINE TA'LEE THOMPSON,

                Plaintiff,

v.

JAMES CORRIGAN et al.,

                Defendants.

_____/

Case No. 2:25-cv-251

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the MDOC as well as the following URF staff: Warden James Corrigan, "Security Classification Coordinator and Residential Unit Manager" M. Lacrosse, and "Security Classification Coordinator and Administration Deputy Warden" R. Pawley. (Compl., ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that when he was housed in level IV "Round unit," he sent a kite to Defendant Pauley as well as an unidentified, nonparty "prisoner counselor," which stated that Plaintiff had "serious issues with people" and that there was "money on [Plaintiff's] head." (*Id.*, PageID.3.) Plaintiff alleges that this concern was ignored, and no one spoke to Plaintiff in response to this message. (*Id.*) Plaintiff was later transferred to level II "Marquette unit." (*Id.*)

On May 19, 2025, while in Marquette unit, Plaintiff noticed other inmates behaving in a manner that Plaintiff felt was suspicious. (*Id.*) Plaintiff attempted to notify unidentified, nonparty correctional officers as well as an unidentified, nonparty prisoner counselor. (*Id.*) The nonparty prisoner counselor told Plaintiff to go back to his cell. (*Id.*)

While Plaintiff was on his way back to his cell, Plaintiff "was called to" the bathroom, at which time a prisoner began questioning Plaintiff. (*Id.*) Plaintiff believed that this prisoner had a weapon, and when this prisoner "tried to catch [Plaintiff] off guard," Plaintiff "swung" and was subsequently "swarmed" by other prisoners. (*Id.*) Plaintiff jumped over a wall to escape, and nonparty correctional officers rushed in, handcuffed Plaintiff, and took him to segregation. (*Id.*)

Thereafter, Plaintiff was not "asked if there were issues" and was not asked if he was safe going to general population. (*Id.*) Later on May 19, Plaintiff was put in "Lime unit." (*Id.*) While there, Plaintiff "was told that [he had] a 'green light,'" so Plaintiff "tried to inform staff[.]" (*Id.*) Later that same day, an unidentified individual "snuck [Plaintiff] from behind," at which point Plaintiff "defended [himself]." (*Id.*)

On an unspecified date, Plaintiff told "SCC" that there was "a hit on" Plaintiff, but "SCC" did not believe Plaintiff. (*Id.*, PageID.4.) Also on an unspecified date, Plaintiff told "the warden" that he was not safe when the warden was forcing Plaintiff to go to general population. (*Id.*)

4

Plaintiff received a misconduct ticket for disobeying a direct order. (*Id.*) Plaintiff also received a destruction of property misconduct ticket "because of retaliation." (*Id.*)

Based on the foregoing allegations, Plaintiff raises Eighth Amendment failure to protect claims and First Amendment retaliation claims. Plaintiff seeks monetary damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant MDOC

Plaintiff brings this suit against the MDOC, among several named defendants. As an initial matter, Plaintiff does not name Defendant MDOC in the body of his complaint. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Defendant MDOC is subject to dismissal for this reason alone.

Moreover, section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the State of Michigan (acting through the MDOC) is not a "person" within the meaning of section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Accordingly, for these reasons, Plaintiff fails to state any claim against Defendant MDOC upon which relief may be granted. The Court will dismiss all claims against Defendant MDOC.

### B.    Eighth Amendment Failure to Protect Claim

Plaintiff asserts that Defendants failed to protect him in violation of the Eighth Amendment.[2] (Compl., ECF No. 1, PageID.3, 5.) Inmates have a constitutionally protected right

---

[2] Plaintiff's complaint identifies two separate Eighth Amendment claims: (i) failure to protect, and (ii) "creating a hostile environment." (Compl., ECF No. 1, PageID.5.) Both claims rest on the same

to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

For a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011). "In determining whether an official was deliberately indifferent, we focus on the individual official's personal involvement, knowledge, and actions." *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021). A generalized risk of violence is insufficient to establish an Eighth Amendment failure to protect claim. *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005).

---

allegations—that Defendants and other nonparty MDOC staff failed to take steps to protect Plaintiff despite Plaintiff presenting concerns of danger—and the Court will construe Plaintiff's allegations as raising an Eighth Amendment claim for failure to protect.

1.    **Defendant Pawley**

Plaintiff alleges that he sent a kite to Defendant Pawley in which Plaintiff "expressed that [he has] serious issues with people and there is money on [his] head." (Compl., ECF No. 1, PageID.3.) Plaintiff contends that this kite was ignored and that no one spoke to him. (*Id.*) A few days after Plaintiff was transferred to Marquette unit, he was involved in multiple fights. (*Id.*)

As an initial matter, it is unclear from Plaintiff's allegations whether Defendant Pawley even received Plaintiff's kite before the fights occurred on May 19, 2025. As such, it is unclear whether Defendant Pawley had the requisite knowledge of the alleged risk. *See Farmer*, 511 U.S. at 837.

Furthermore, assuming without deciding that Defendant Pawley received Plaintiff's kite prior to May 19, 2025, Plaintiff's allegations are still insufficient to show that Defendant Pawley violated Plaintiff's Eighth Amendment rights. Specifically, Plaintiff alleges that he informed Defendant Pawley that Plaintiff "had serious issues with people" and that there was "money on [Plaintiff's] head." (*Id.*) But Plaintiff's allegations do not state where these individuals with whom Plaintiff had "serious issues" were located and suggest only a generalized risk of violence. *See Brown*, 398 F. 3d at 904, 913. To the extent that Plaintiff asserts that it was his transfer to the Marquette unit that put his safety at excessive risk, these allegations do not show that Defendant Pawley knew of and disregarded an excessive risk to Plaintiff's safety caused by transferring Plaintiff to Marquette unit because the allegations do not state that the individuals with whom Plaintiff had "serious issues" were in Marquette unit. *See Farmer*, 511 U.S. at 837. As alleged, these stated concerns are too vague to show that Defendant Pawley knew of and disregarded an excessive risk to Plaintiff's safety. *See id*.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claims against Defendant Pawley will be dismissed for failure to state a claim.

### 2.    Defendant Corrigan

As an initial matter, Plaintiff does not attribute any factual allegations specifically to Defendant Corrigan. (*See generally* Compl., ECF No. 1.) Plaintiff refers to "the warden," but it is unclear if this is a reference to Defendant Corrigan. (Compl., ECF No. 1, PageID.4.) Assuming, without deciding, that this is a reference to Defendant Corrigan, Plaintiff only alleges that on an unspecified date, Plaintiff told Defendant Corrigan that Plaintiff was "not safe" and that Defendant Corrigan was forcing Plaintiff to go to general population. (*Id*.) Because Plaintiff does not state when this conversation took place, the Court is unable to conclude that forcing Plaintiff to go to general population shows that Defendant Corrigan knew of and disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837. Additionally, Plaintiff's statement to Defendant Corrigan that Plaintiff was "not safe" is too vague to show that Defendant Corrigan knew of an excessive risk to Plaintiff's safety and merely suggests a generalized risk of violence. *See Brown*, 398 F.3d at 909, 913.

To the extent that Plaintiff seeks to hold Defendant Corrigan liable due to his supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

9

"[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Plaintiff fails to allege any facts showing that Defendant Corrigan encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claims against Defendant Corrigan will be dismissed for failure to state a claim.

### 3.    Defendant Lacrosse

As with Defendant Corrigan, Plaintiff does not attribute any factual allegations specifically to Defendant Lacrosse. Plaintiff identifies Defendant Lacrosse as "SCC M. Lacrosse." (Compl., ECF No. 1, PageID.3.) Then when setting forth his factual allegations, Plaintiff alleges that he "told SCC" that there was a "hit" on Plaintiff, and that "SCC" told Plaintiff that he would be fine. (*Id.*, PageID.4.) It is unclear if Plaintiff's reference to "SCC" refers to Defendant Lacrosse. (*Id.*) Assuming, without deciding, that this is a reference to Defendant Lacrosse, Plaintiff's allegation regarding a conversation he had with Defendant Lacrosse on an unspecified date is insufficient to show that Defendant Lacrosse had the requisite knowledge needed to be liable for a violation of Plaintiff's Eighth Amendment right to protection. *See Farmer*, 511 U.S. at 837. Moreover, Plaintiff's statement to Defendant Lacrosse at an unspecified time that there was a "hit" on Plaintiff, is too vague to show that Defendant Lacrosse knew of an excessive risk to Plaintiff's safety. *See id*.

10

Accordingly, Plaintiff's Eighth Amendment failure to protect claim against Defendant Lacrosse will be dismissed for failure to state a claim.

### 4.    Allegations against Nonparty Individuals

In addition to the allegations regarding the named Defendants, Plaintiff's complaint refers to conversations with unidentified nonparty correctional officers, prisoner counselors, and MDOC "staff." (Compl., ECF No. 1, PageID.3–4.) Specifically, Plaintiff states that when he noticed other prisoners acting suspiciously before the first fight occurred, that he attempted to speak to unidentified correctional officers and a prisoner counselor, and this prisoner counselor told Plaintiff to go back to his cell. (*Id*., PageID.3.) Similarly, Plaintiff asserts that after the first fight but before the second fight, he "tried to inform staff" about the danger Plaintiff faced. (*Id*.) Plaintiff also alleges that he "verbally told correctional officers" about Plaintiff's "issues," and that those correctional officers ignored Plaintiff. (*Id*., PageID.4.) None of the referenced individuals are identified or named as a defendant in this case.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Plaintiff's allegations regarding unidentified, nonparty individuals are insufficient to establish that any of the named Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

Moreover, Plaintiff's allegations suggest that MDOC staff were responsive to Plaintiff's safety concerns. While in level IV Round unit, Plaintiff sent a kite stating that he had "serious issues with people," and was subsequently transferred to level II Marquette unit. (Compl., ECF No. 1, PageID.3.) Then, after Plaintiff was involved in a fight in Marquette Unit, he was sent to Lime unit. (*Id*.) These allegations suggest that the unidentified MDOC staff discussed in the complaint were responsive to Plaintiff's safety concerns.

11

Accordingly, Plaintiff fails to state any claim against the nonparties discussed in the complaint.

### C.        First Amendment Retaliation Claim

Finally, Plaintiff alleges that he was improperly given two misconduct tickets and asserts that these tickets were given in retaliation. (Compl., ECF No. 1, PageID.4, 5.) The Court will construe this as a claim for violation of the First Amendment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory

motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Here, Plaintiff alleges that he was issued two misconduct tickets "because of retaliation." (Compl., ECF No. 1, PageID.4, 5.) As an initial matter, Plaintiff's allegations do not suggest that any of the named Defendants were involved in the issuance of the misconduct tickets. Moreover, Plaintiff's allegations are insufficient to show a retaliatory motive. Plaintiff fails to identify who issued these tickets and merely presents a conclusory allegation that the tickets were issued "because of retaliation." (*See id.*, PageID.3–5.) Such conclusory allegations, unsupported by material facts, are insufficient to establish a First Amendment retaliation claim. *See Harbin-Bey v. Rutter*, 420 F.3d at 580.

Accordingly, the Court will dismiss any intended First Amendment retaliation claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated:    July 8, 2026                                      /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           United States Magistrate Judge

13